## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

James P. Gianakis, Esq.
Attorney ID # JG 3930
**GIANAKIS LAW LLC**
315 Madison Avenue, 3rd Floor
New York, New York 10017
Tel: (646) 979-3750
Fax: (973) 218-2401
Email: jim.gianakis@gmail.com

Attorney for Plaintiff

|  |  |
|---|---|
| PHILIP COLUMBO,<br><br>                Plaintiff,<br><br>v.<br><br>PHILIPS BRYANT PARK LLC d/b/a<br>THE BRYANT PARK HOTEL LLC,<br>PHILIPS INTERNATIONAL HOLDING<br>CORP., ASG EQUITIES LLC,<br>MAVERICK MANAGEMENT CORP.,<br>PHILIP PILEVSKY, ISAAC GINDI,<br>EZRA SULTAN, MICHAEL PILEVSKY,<br>SHEILA CHESS, SETH PILEVSKY,<br>XYZ CORPORATIONS 1-10, and<br>JOHN AND JANE DOES 1-10,<br><br>                Defendants. | UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br><br>Civil Action No. _____<br><br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff, Philip Columbo ("Columbo" or "Plaintiff"), through his attorney, James P. Gianakis, Esq., by way of Complaint against Defendants, Philips Bryant Park LLC d/b/a The Bryant Park Hotel LLC (the "Hotel"), Philips International Holding Corp. ("PIHC"), ASG Equities LLC (ASG"), Maverick Management Corp. ("Maverick"), Philip Pilevsky, Isaac Gindi, Ezra Sultan, Michael Pilevsky, Sheila Chess, Seth Pilevsky, XYZ Corporations 1-10, and John and Jane Does 1-10 (collectively "Defendants"), hereby states as follows:

## PARTIES

1.     At all relevant times to this action, Philip Columbo was employed as the Asset Manager and Managing Director for the Hotel.  He was recruited to meet with ownership of the Hotel in 2001, hired as a consultant in 2001, added to the payroll as a full-time employee in July 2002, and remained in that capacity through August 27, 2021.  He currently lives at 4285 River Bank Way, Punta Gorda, Florida 33980.

2.     At all relevant times to this action, Philips Bryant Park LLC d/b/a The Bryant Park Hotel LLC has been and continues to be a hotel and restaurant business.  It is a New York limited liability company with its registered business address at 40 Cutter Mill Road, Suite 206, Great Neck, New York 11021 and a principal place of business at 40 West 40th Street, New York, New York 10018.

3.     At all relevant times to this action, Philips International Holding Corp. ("PIHC") has been and continues to be a real estate company with as much as a fifty-one percent (51%) majority ownership share of the Hotel.  It is a New York corporation having its registered business address for service of process c/o Corporate Service Company, 80 State Street, Albany, New York 12207-2543, and its global headquarters and principal place of business at 40 Cutter Mill Road, Suite #206, Great Neck, New York 11021.

4.     At all relevant times to this action, ASG Equities LLC (ASG") has been and continues to be a real estate company with as much as a twenty-five percent (25%) ownership share of the Hotel.  It is a New York limited liability company having its registered business address at 175 Broadway, 2nd Floor, New York, New York 10007, and a principal place of business at 22 Cortlandt Avenue, New York, New York 10007.

5.     At all relevant times to this action, Maverick Management Corp. ("Maverick") has been a real estate company with as much as a twenty percent (20%) ownership share of the Hotel.

2

It is a New York corporation having its registered business address at 1000 Pennsylvania Avenue, Brooklyn, New York 11207, and a principal place of business at 1000 Granville Payne Avenue, Brooklyn, New York 11207.

6.     At all relevant times to this action, Philip Pilevsky has been and continues to be an owner and the Chairman of PIHC, which remains the managing member of the Hotel, working out of PIHC's global headquarters and principal place of business at 40 Cutter Mill Road, Suite #206, Great Neck, New York 11021.

7.     At all relevant times to this action, Isaac Gindi has been and continues to be an owner and the Executive Vice President of Century 21 Real Estate LLC ("Century 21"), which shares ownership interest in ASG, working out of Century 21's global headquarters and principal place of business at 22 Cortlandt Avenue, New York, New York 10007.

8.     At all relevant times to this action, Ezra Sultan has been and continues to be the Chief Financial Officer of Century 21 and ASG, working out of ASG's global headquarters and principal place of business at 22 Cortlandt Avenue, New York, New York 10007.

9.     At all relevant times to this action, Michael Pilevsky has been and continues to be an owner and the President of PIHC, which remains the managing member of the Hotel, working out of PIHC's global headquarters and principal place of business at 40 Cutter Mill Road, Suite #206, Great Neck, New York 11021.

10.     At all relevant times to this action, Sheila Chess has been and continues to be an owner and the Executive Vice President of PIHC, which remains the managing member of the Hotel, working out of PIHC's global headquarters and principal place of business at 40 Cutter Mill Road, Suite #206, Great Neck, New York 11021.

11.     At all relevant times to this action, Seth Pilevsky has been and continues to be an owner and the Vice President of PIHC, which remains the managing member of the Hotel,

3

working out of PIHC's global headquarters and principal place of business at 40 Cutter Mill Road, Suite #206, Great Neck, New York 11021.

12.    At all relevant times to this action, XYZ Corporations 1-10 are currently unknown affiliated entities, who have liability for the claims set forth herein. As the parties engage in discovery and these entities are identified, Columbo retains the right to amend the Complaint to add these individual entities by name.

13.    At all relevant times to this action, John and Jane Does 1-10 are currently unknown individuals who were members of the Board of Directors and/or senior management level employees who controlled Columbo's workplace and/or supervised Columbo and/or aided and abetted in the commission of conduct complained of herein and/or either acted within the scope of their employment at the workplace during working hours or to the extent they went beyond the scope of their employment, ratified, embraced and added to this conduct. As the parties engage in discovery and these individuals are identified, Columbo retains the right to amend the Complaint to add these individuals by name.

## JURISDICTION AND VENUE

14.    This Complaint is brought by Plaintiff seeking injunctive relief and damages pursuant to federal, New York state, and New York City statutory and common law.

15.    The Court has subject matter jurisdiction over this action pursuant to *28 U.S.C. §1331 (Federal Question)*. The matter in controversy involves issues of federal law, including but not limited to mismanagement and conversion of Plaintiff's deferred compensation retirement plan in violation of Internal Revenue Code Section 409A, breaches of corporate fiduciary responsibilities, breaches of contract, violations of tax law, violations of labor law, and violations of the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended ("COBRA").

4

16.     The Court also has subject matter jurisdiction over this action pursuant to *28 U.S.C.*
*§ 1332 (Diversity)*. The matter in controversy exceeds the sum of $75,000, exclusive of interest
and costs, and is between citizens of different states. Plaintiff is a resident of the state of Florida.
Defendants are business entities registered and doing business in the state of New York and/or
individuals residing in the state of New York.

17.     The court has personal jurisdiction over Defendants and venue is proper pursuant to
*28 U.S.C. §1391(a)* as Plaintiff worked for Defendants, and was paid by Defendants, in and
through the Southern District of New York. A substantial part of the events giving rise to this
claim occurred within the Southern District of New York.

## STATEMENT OF MATERIAL FACTS

18.     This is a civil action for entry of a final judgment of injunctive relief and damages,
based upon (a) the unlawful withholding of deferred compensation and retirement benefits by
Defendants, (b) the unlawful failure by Defendants to properly manage those funds, (c) the
unlawful conversion of those funds for Defendants' own benefit; and (d) the unlawful treatment of
Columbo by Defendants in decisions to, among other things, terminate his employment and health
insurance benefits without proper notice, and maintain control over Columbo in connection with
several pending labor arbitrations.

19.     Columbo is a former employee of the Hotel, who was recruited to join the Hotel by
Isaac Gindi, and after a brief consulting period in 2001, commenced his full-time employment as
the Hotel's Asset Manager and Managing Director in July 2002. He remained in that role, serving
the Hotel, its ownership, and its guests, for twenty years through his late date of employment on
August 27, 2021.

20.     On or about June 26, 2006, Columbo was invited to sit down with Isaac Gindi and
Zuri Sultan on behalf of the Hotel and was presented a non-qualified deferred compensation

retirement plan in recognition of Columbo's contributions and loyalty to Defendants with an expectation that Columbo would remain in dedicated service to Defendants for a significant period of time and be rewarded accordingly. Gindi and Sultan explained to Columbo that they would sit with Columbo each December beginning with December 2006, at which time Defendants would determine the REVPAR (occupancy multiplied by average rate) budget for the upcoming year. Gindi and Sultan further explained to Columbo that beginning in 2007 (a) Defendants would make contributions to a separate designated account for Columbo based upon performance of the Hotel and calculation of the annual incentive against the REVPAR budget from that previous twelve month period, (b) the separate fund would be supplemented with each year's contribution as determined at an annual December meeting between Gindi, Sultan, and Columbo, (c) the funds in Columbo's account would be available for investment and multiply over time from their investment growth, (d) the funds in Columbo's account would vest over time and with certain qualifying events, and (e) the non-qualified deferred compensation plan would serve as a retirement fund for Columbo when his relationship with the Hotel ended. See **Exhibit A** (Letter from Sultan to Columbo, with accompanying Sample Incentive Schedule, presented on or about June 26, 2006, explaining the deferred compensation retirement plan).

21.     Each December from 2005 through 2019, Columbo sat down with Gindi and Sultan to determine the amount of Defendants' financial contribution to Columbo's retirement plan, at which time Gindi and Sultan represented on behalf of Defendants to Columbo that the funds that had been calculated would be directed to Columbo's retirement account and managed for him.

22.     By December 2010, there was $236,786.81 in the account. Beginning on March 17, 2011, however, Defendants decided to "loan" these dedicated funds to meet the operational needs of the Hotel. The account was emptied by the end of 2011, and subsequent REVPAR-based contributions to Columbo's deferred compensation plan in 2011 ($18,775.00), 2013 ($29,575.00),

6

2014 ($59,975.00), 2017 ($15,425.00), and 2018 ($21,600.00), as well as the reimbursement of bank fees over the years, were apparently all recognized on the Hotel's books, but never actually contributed to Columbo's designated account. By August 27, 2018, the Hotel's business records showed that a $382,374.57 debt was owed to Columbo based upon these annual contributions, albeit without recognition that the funds were not actually in a separate designated account for Columbo and therefore not able to realize any potential earnings on those funds over time as had been contemplated when the plan was introduced and had been consistently and repeatedly promised to Columbo by Defendants. **See Exhibit B** (Hotel ledger of Columbo's Deferred Compensation Calculations prepared by the Hotel's Chief Financial Officer, Michael Strauss, on or about August 27, 2018).

23.     During his period of employment with the Hotel, Columbo became widely recognized and relied upon by Defendants for all matters related to the Hotel, including personnel management, financial management, day-to-day operations, special events, and maintenance of the physical complex.

24.     During his period of employment with the Hotel, Columbo was also asked consistently and repeatedly by Defendants to go out of his way to do things for them, including but not limited to arranging hotel rooms, dinners and/or event space for Defendants' family members, friends, and special guests, including celebrities who visited the Hotel. Consistently and repeatedly, Columbo not only delivered but exceeded expectations and was praised by Defendants.

25.     In recognition of the value that Columbo provided and the loyalty he demonstrated, which was widely recognized by everyone who had dealings with the Hotel, Columbo was invited in or about 2017 to serve on Defendants' behalf in representing the Hotel and its affiliates on the Board of Directors of the Bryant Park Corporation. Columbo remained in that position into 2021.

7

26.     Columbo continued to do more and more, but grew increasingly concerned about the status of the Hotel, and in turn, his future. When he met with Gindi and Sultan on December 22, 2019, Columbo was sixty-nine (69) years old and specifically raised the issue of his deferred compensation plan. As they always had, Gindi and Sultan on behalf of the Hotel represented to Columbo that the calculated amount of annual contributions, plus earnings on those funds over the time that they should have been separately designated and managed by Defendants on Columbo's behalf, would be paid out to Columbo when he left the Hotel or retired. Columbo also approached Philip Pilevsky, with whom he interacted regularly regarding day-to-day management of the Hotel, and Philip Pilevsky gave Columbo the same assurances that Defendants appreciated his tireless contributions, recognized their financial obligations to him through this deferred compensation plan that was intended to grow with his years of service, and would make good on everything that was due to Columbo when he decided to retire.

27.     Months later, in or about March 2020, the Hotel was severely impacted, along with the entire global economy and hotel industry, by the COVID-19. The Hotel was ordered to close its operations, and Defendants directed that most of the Hotel's personnel be laid off immediately. Columbo repeatedly expressed to Defendants his surprise, disagreement, and concern about this practice. These decisions by Defendants have led to a number of legal claims that are pending in arbitration and that have resulted in Columbo being named as a party or called as a witness.

28.     Defendants also decided to treat vendors in a similar fashion, by promising payment for services but then never delivering on those promises and then evading any accountability for their actions. Columbo repeatedly expressed to Defendants his surprise, disagreement, and concern about this practice.

29.     Instead, Defendants turned to Columbo and demanded that he manage the two (2) part-time employees who remained (after terminating 118 employees) and continue to handle

8

everything, around the clock, with limited funds and resources, on Defendants' behalf during these unprecedented times. Notably, Defendants also directed that Columbo's salary be cut by fifty-five (55%) from its then current level of $375,000 annually to $175,000. As a result, Columbo was now being asked to work seven (7) days per week for only forty-five percent (45%) of the salary he had been earning.

30.    By September 2020, Defendants directed the Hotel to open in a limited capacity, but did not provide the financial support or resources that were necessary to do that, only authorized the hiring of twelve (12) employees, and instead relied on Columbo to continue to work around the clock to make it happen.

31.    Columbo realized that it was time to leave the Hotel. Defendants were treating him differently, and he was exhausted by the demands that were being placed on him to be available 24 hours per day, 7 days per week without any real support. Philip Pilevsky, with whom Columbo had enjoyed a good working relationship for nearly two decades, had stepped away from the day-to-day management of the Hotel in 2020 and was replaced by Michael Pilevsky, Sheila Chess, and Seth Pilevsky, who showed little respect for Columbo's continuing contributions and clearly had another agenda for the Hotel that did not include Columbo.

32.    Columbo approached Defendants to confirm that the funds in his retirement account would be available to him when he left the Hotel, as had been specifically promised by Gindi and Sultan. Several members of the Hotel's ownership and management – i.e., Philip Pilevsky, Sheila Chess, Isaac Gindi, Zuri Sultan, and Michael Strauss – acknowledged that this money was dedicated and due to Columbo. **See Exhibit C** (Email exchanges between Defendants regarding Columbo's retirement funds, dated March 5, 2021 through April 7, 2021). However, there were three significant problems. Columbo came to find out that there was no money in the account that was supposed to be set aside for him, that the money as a result had not been invested

9

to produce any earnings as had been specifically contemplated and consistently represented by Sultan among others, and that there was no intent on behalf of Defendants to honor their commitment to fund the account and to make the funds available to Columbo.

33.     Columbo made multiple efforts to address this concern with Defendants and was repeatedly ignored, instead being directed by Defendants to increase his efforts to serve Defendants' interests in managing the operations of the Hotel.

34.     Finally, by August 2021, Columbo now seventy (70) years old, had no choice but to reach out to Defendants with his formal notice of retirement.  Defendants again thought only of their own agenda by requesting that Columbo extend his time with the Hotel for an additional month to allow them time to find a replacement and to remain available to assist them even beyond leaving his employment with the Hotel for up to ninety (90) days to ensure a smooth transition and that any concerns with the Hotel would be addressed properly and without interruption.  Columbo, in keeping with his character of demonstrated loyalty and good faith, shared that he was willing to assist Defendants as long as Defendants honored their commitment to him regarding the retirement funds and recognized the time and effort that he would be providing during this requested period of transition, as well as in connection with several pending legal matters for which Columbo's cooperation was required.

35.     Again, there were promises with little action from Defendants.  Defendants directed that an initial payment of $50,000 be provided to Columbo from the funds that should have been set aside already for him in exchange for Columbo remaining available to them with a representation that the balance of what was owed to him would follow.  When nothing followed, Columbo expressed again that he was upset with how he had been treated.

36.     In a last ditch effort to continue to keep him at bay, Defendants offered to pay him another $10,000, only to then fail to process the payment and deny that the promise to pay was

10

ever made. When they were called out for having promised and then lied about this issue, Defendants eventually processed the $10,000 payment, but the damage was done.

37. By August 27, 2021, it became clearer than ever to Columbo that Defendants were playing games to keep him available to serve their own interests and that they had no real intention to honor their commitments to him or even the promises they were making regarding the proposed period of transition. To make matters worse, Columbo received a message – not from Defendants, but from a headhunting agency – notifying him that Defendants had hired a replacement for him to begin on August 30, 2021. And in the days that followed, Columbo came to understand that Defendants had unilaterally directed, without notice to him, that his health insurance coverage was terminated effective August 27, 2021 even though it had been paid with deductions from his payroll through August 31, 2021.

38. The Hotel has an obligation to comply with federal, state and local laws, as well as the Hotel's own set of policies and procedures that clearly outline how these matters should have been addressed and the consequences for not following those standards. Nevertheless, Defendants have violated several federal, state and local laws, as well as the Hotel's own policies and procedures, and in so doing, have failed to protect the legal rights, reputation, and well-being of one of its most dedicated and loyal employees.

39. In violation of federal, state, and local labor laws, Defendants failed to pay proper wages to Columbo for the work that they requested of him, demanding that he be "on call" and available 24 hours per day, 7 days per week, and failed to deliver wages that were earned by him in the time that they should have been delivered.

40. In violation of federal, state, and local laws, including but not limited to Section 409A of the Internal Revenue Code and relevant tax laws, Defendants failed to safeguard and to

11

properly manage retirement funds that had been dedicated year over year for Columbo's sole benefit.

41.     In violation of federal, state, and local laws, including but not limited to corporate fiduciary responsibilities that impose both civil and potentially criminal corporate and personal liabilities, Defendants converted funds that had been dedicated to Columbo for their own business and personal use and benefit.

42.     In violation of federal law, Defendants cut off Columbo's health insurance prematurely and without notice and failed to provide the required COBRA notifications to Columbo following his termination of employment.

43.     For twenty (20) years, the Hotel realized tremendous successes and weathered unprecedented challenges, particularly due to the global pandemic in 2020 and 2021, because of Columbo's tireless dedication and care. Consistently and repeatedly, Defendants acknowledged owing Columbo, but refused to pay him. Those funds totaled $382,374.57 in principal, of which only $60,000 has been paid, not including the earnings those funds should have realized in being managed properly for nearly fifteen (15) years in a time when the financial markets exploded, statutory interest on those funds compounded over that time, and penalties, which multiply that amount owed and require Defendants to pay Columbo's legal fees and costs.

44.     Further, the Hotel is being sued currently by a number of former employees, contractors, and vendors. Columbo has been dragged into these allegations, and resulting pending arbitrations, solely due to the position that he held for years. Columbo has cooperated fully through these matters, and plans to continue to cooperate with Defendants and Defendants' insurance defense legal counsel, but discovery has confirmed the undisputed material facts that he acted lawfully at all times. The allegations against Columbo personally should be dismissed and/or resolved through settlement while Defendants decide how to continue to defend the claims

against the Hotel. Defendants' failure to resolve the issues related to Columbo's employment and compensation, as well as the claims against Columbo personally, places additional, undue stress, anxiety, and commitment on Columbo.

45.     Columbo has attempted to resolve these issues by consistently and repeatedly offering to work together toward a mutually beneficial solution, but has received nothing more than meaningless responses from Defendants. Columbo has no choice but to seek legal action, including but not limited to the instant request for injunctive relief and damages.

## **RELIEF REQUESTED**

WHEREFORE, for the reasons stated herein, Columbo demands judgment against Defendants, jointly and severally, under any and all of the following causes of action:

a.  Breach of contract;

b.  Promissory estoppel;

c.  Failure to pay compensation and other benefits in a timely manner and within thirty (30) days of termination of the employment relationship;

d.  Breach of fiduciary duty;

e.  Common law fraud;

f.  Intentional misrepresentation;

g.  Negligence and negligent misrepresentation;

h.  Tortious interference with actual and/or prospective business dealings;

i.  Theft by conversion;

j.  Conversion;

k.  Unjust enrichment; and

l.  Estoppel.

13

WHEREFORE, for the reasons and causes of action stated herein, Columbo demands a final judgment in the amount of One Million Five Hundred Thousand Dollars ($1,500,000.00) against Defendants, jointly and severally, for relief, including but not limited to:

a.   Immediate and permanent injunctive relief compelling Defendants to refrain from using funds that should have been designated for Columbo, together with interest, penalties, attorneys' fees and costs, so that said funds remain available to satisfy Defendants' obligations to Columbo in the amount of this award;

b.   Compensation owed to Columbo pursuant to the terms of his employment, including but not limited to wages, calculated at the appropriate regular and/or overtime rates, as well as for paid time off that Columbo should have been allowed to take during his period of employment;

c.   Earnings on the amount of compensation owed based upon the timing of when those funds should have been set aside, invested, and managed properly by Defendants for Columbo and based upon the performance of the financial markets during the relevant period;

d.   Liquidated (100%) damages on the amount of compensation owed based upon the refusal of Defendants to pay Columbo beyond the required date upon which said compensation became due to Columbo;

e.   Interest, calculated at the statutory rate, for all compensation owed to Columbo from the date such payments became due to Columbo to the date they are actually paid;

f.   Immediate and permanent injunctive relief compelling Defendants to direct, and to refrain from restricting Columbo in any way from directing,

14

Defendants' insurance defense legal counsel to resolve all legal claims in the pending arbitrations as they relate to Columbo personally and to indemnify and hold harmless Columbo from any further potential liability and/or expense;

g.     Punitive damages for the malicious and intentional manner in which Defendants decided to treat Columbo;

h.     Attorneys' fees and costs associated with Columbo having to pursue this legal action to retrieve earned, but unpaid compensation and other benefits owed to him by Defendants and to address the allegations that have been raised against him in pending arbitrations; and

i.     Such other relief as the Court deems just and equitable based upon the position taken by Defendants to avoid their legal obligations.

## JURY DEMAND

In the event this cause of action proceeds to trial, I hereby request that it be heard and decided by a jury.

## DESIGNATION OF TRIAL COUNSEL

James P. Gianakis, Esq., is hereby designated as trial counsel for Philip Columbo in this cause of action.

15

## CERTIFICATION

In accordance with Local Civil Rules, I hereby certify to the best of my knowledge that other than the pending labor arbitrations in which Columbo and the Hotel are named co-defendants represented by the Hotel's insurance defense carrier, the matter in controversy in this action is not the subject of any other action or proceeding pending in any court or arbitration tribunal and that no such action or arbitration is presently contemplated.

I further certify that at present time, I am unaware of any other parties who should be joined in this action.

Attorney for Plaintiff

Dated:  January 28, 2022
By:___*s / James P. Gianakis*_____
JAMES P. GIANAKIS, ESQ.

James P. Gianakis, Esq.
Attorney ID # JG 3930
GIANAKIS LAW LLC
315 Madison Avenue, 3rd Floor
New York, New York 10017
Tel:  (646) 979-3750
Fax:  (973) 218-2401
Email:  jim.gianakis@gmail.com

EXHIBIT A

Phil Columbo
Bryant Park Hotel
40 West 40th Street
New York, NY 10018
Sent via E-mail to pcolumbo@bryantparkhotel.com

Dear Phil:

Please find below a description of your Compensation Program.  The structure has been
reviewed and approved by the partners of The Bryant Park Hotel:

1) **Existing salary to be increased 6%**

   a) From $299,000 to $317,000

· 2) **Existing REVPAR incentive to remain in place**

3) **Most recent bonus paid: $25,000 in December 2005**

   a) Next Review December 2006

4) **New REVPAR incentive:**

   a) $2,500 for each $1 above REVPAR budget.
      i) Budget to be approved in advance each year by ownership
      ii) July 2006 – June 2007 REVPAR budget: **$285.00**
      iii) Earned incentive to be deposited into a separate account to grow tax free, invested
           at Phil Columbo's direction
      iv) Earned incentive to vest at 20% per year for five years – see enclosed example
      v) Non-qualified plan – non-taxable, non-deductable until paid
      vi) This plan may be withdrawn going forward at any time

   b) Incentive distributions
      i) Upon resignation, we will make distributions of all vested funds plus earnings
      ii) Upon termination without cause, we will make distributions of all vested and
          unvested fund plus earnings, if any
      iii) Upon termination with cause, we will not make any distributions
      iv) Upon sale of hotel, all unvested funds will immediately vest and be distributed
      v) Upon reaching the age of 65, all unvested funds will immediately vest

If you have any questions please do not hesitate to ask.

                                    Regards,
                                    Zuri Sultan

## Sample Incentive Schedule
As of 6/26/06

| | | |
|---|---|---|
| REVPAR Incentive Hurdle: | | $285 |
| Earned $ per $1 REVPAR | | $2,500 |
| Investment rate | | 5% |

| Year earned | Budget REVPAR | Actual REVPAR | Incentive earned | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | **Vesting Schedule** | | | | | |
| 2007 | $285 | $305 | 50,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | | | | | |
| 2008 | $285 | $305 | 50,000 | | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | | | | |
| 2009 | $285 | $305 | 50,000 | | | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | | | |
| 2010 | $285 | $305 | 50,000 | | | | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | | |
| 2011 | $285 | $305 | 50,000 | | | | | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | |
| 2012 | $285 | $305 | 50,000 | | | | | | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| 2013 | $285 | $305 | 50,000 | | | | | | | 10,000 | 10,000 | 10,000 | 10,000 |
| 2014 | $285 | $305 | 50,000 | | | | | | | | 10,000 | 10,000 | 10,000 |
| 2015 | $285 | $305 | 50,000 | | | | | | | | | 10,000 | 10,000 |
| 2016 | $285 | $305 | 50,000 | | | | | | | | | | 10,000 |

| | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 |
|---|---|---|---|---|---|---|---|---|---|---|
| Vested this year | 10,000 | 20,000 | 30,000 | 40,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 |
| Earned this year | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 |
| Cumulative Vested | 10,000 | 30,000 | 60,000 | 100,000 | 150,000 | 200,000 | 250,000 | 300,000 | 350,000 | 400,000 |
| Cumulative Unvested | 40,000 | 70,000 | 90,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 |
| **Cumulative Earned** | 50,000 | 100,000 | 150,000 | 200,000 | 250,000 | 300,000 | 350,000 | 400,000 | 450,000 | 500,000 |
| Prior year balance | 0 | 50,000 | 102,500 | 157,625 | 215,506 | 276,282 | 340,096 | 407,100 | 477,455 | 551,328 |
| Plus: Earned this year | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 |
| Plus: Prior year invested @ 5% | 0 | 2,500 | 5,125 | 7,881 | 10,775 | 13,814 | 17,005 | 20,355 | 23,873 | 27,566 |
| Grand Total | 50,000 | 102,500 | 157,625 | 215,506 | 276,282 | 340,096 | 407,100 | 477,455 | 551,328 | 628,895 |
| Less: Cumulative Unvested | 40,000 | 70,000 | 90,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 |
| Grand Total Vested Incl. Growth | 10,000 | 32,500 | 67,625 | 115,506 | 176,282 | 240,096 | 307,100 | 377,455 | 451,328 | 528,895 |

For illustration purposes only.

# EXHIBIT B

## PHIL COLUMBO DEFERRED COMPENSATION CALCULATIONS
### AT August 27, 2018

### SPECIAL PARTNER'S CASH ACCOUNT RECONCILIATION

| Date | Activity | Contributions | Interest Inc | Bank Fees | Loans to Ops | Bank Balance |
|---|---|---|---|---|---|---|
| 8/25/2008 | Transfer from Money market | 105,000.00 | | | | 105,000.00 |
| 10/20/2008 | Transfer from CD | 111,587.81 | | | | 216,587.81 |
| 12/31/2008 | Interest 2008 | | 1,880.70 | | | 218,468.51 |
| 12/31/2009 | Interest 2009 | | 2,303.31 | | | 220,771.82 |
| 9/14/2010 | Additional Contribution | 15,000.00 | | | | 235,771.82 |
| 12/31/2010 | Interest 2010 | | 1,014.99 | | | 236,786.81 |
| 12/31/2010 | Bank Fees 2010 | | | (200.00) | | 236,586.81 |
| 3/17/2011 | Loan to Operations | | | | (50,000.00) | 186,586.81 |
| 3/18/2011 | Loan to Operations | | | | (150,000.00) | 36,586.81 |
| 6/8/2011 | Loan to Operations | | | | (36,200.00) | 386.81 |
| 12/31/2011 | Interest 2011 | | 237.76 | | | 624.57 |
| 12/31/2011 | Bank Fees 2011 | | | (45.00) | | 579.57 |
| 8/29/2013 | Bank Fees 2012 - Aug 29, 13 | | | (148.79) | | 430.78 |
| **Total** | | **231,587.81** | **5,436.76** | **(393.79)** | **(236,200.00)** | **430.78** |

### Phil Columbo Deferred Compensation

| | |
|---|---|
| Bank Balance at 8/29/13 | 430.78 |
| Loan due from Operations | 236,200.00 |
| Addtnl Contribution 12/31/11 | 18,775.00 |
| Addtnl Contribution 8/29/13 | 29,575.00 |
| Addtnl Contribution 7/17/14 | 59,975.00 |
| Addtnl Contribution 7/19/17 | 15,425.00 |
| Addtnl Contribution 8/27/18 | 21,600.00 |
| Reimbursement for fees | 393.79 |
| | |
| **Total due Phil Columbo** | **382,374.57** |

EXHIBIT C

**From:** Sheila Chess
**Sent:** Wednesday, April 7, 2021 12:36 AM
**To:** Michael B. Strauss
**Cc:** Michael Pilevsky; Phil Columbo
**Subject:** RE: Aged Accounts Payable


Can you send me another update but take out bank interest
Ty


Sheila Chess
Executive Vice President
P H I L I P S  I N T E R N A T I O N A L
40 Cutter Mill Road, Suite 206, Great Neck, NY 11021
Tel: 212.951.3838 Fax: 212.545.1405
http://www.pihc.com

**From:** Michael B. Strauss [mailto:mstrauss@bryantparkhotel.com]
**Sent:** Monday, March 8, 2021 10:32 AM
**To:** Sheila Chess <schess@pihc.com>
**Cc:** Michael Pilevsky <mpilevsky@pihc.com>; Phil Columbo <pcolumbo@bryantparkhotel.com>
**Subject:** RE: Aged Accounts Payable

See attached Aged Accounts Payable report, in Excel format, as requested.

**Michael Strauss**
**Finance and Accounting**
**THE | BRYANT PARK HOTEL**
40 West 40th Street New York, NY 10018
212-642-2176



**From:** Sheila Chess <schess@pihc.com>
**Sent:** Friday, March 05, 2021 4:47 PM
**To:** Michael B. Strauss <mstrauss@bryantparkhotel.com>
**Cc:** Michael Pilevsky <mpilevsky@pihc.com>; Phil Columbo <pcolumbo@bryantparkhotel.com>
**Subject:** Re: Aged Accounts Payable

Can you put in on an excel spreadsheet please
Ty

Sheila Chess
Executive Vice President
PHILIPS INTERNATIONAL
40 Cutter Mill Road, Suite 206, Great Neck, NY 11021
Tel: 212.951.3838 Fax: 212.545.1405
Http://www.pihc.com

> On Mar 5, 2021, at 4:20 PM, Michael B. Strauss <mstrauss@bryantparkhotel.com>
> wrote:

**As requested, attached is the aged accounts payable schedule.**

- **Total $1,383,544 payable as of March 5, 2021**
  - o   Includes $489,714 to BP Lender for B Note Interest
  - o   Includes $200,385 to Unique Construction for Façade contract
  - o   Includes $65,250 to Everest Scaffolding for façade work
  - o   Includes $217,928 to Con-Ed which is being challenged because billing is estimated and not actual
  - o   Includes $51,548 to NYC Water Board
  - o   Includes $48,746 to Clifton Budd
  - o   $309,973 everything else
- **I'm recommending we pay approx $300,000 in old payables over the next 60 days**

- This does not include approx $25,000 in unreconciled Travel Agent commissions)
- This does not include $382,375 to Phil Colombo for deferred compensation agreement
- This does not include Sales Tax Audit balance due – no total yet – not completed.

**Michael Strauss**
**Finance and Accounting**
**THE | BRYANT PARK HOTEL**
40 West 40th Street New York, NY 10018
212-642-2176

<image001.jpg>

<image002.jpg>
<image003.jpg>